**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICAH JESSOP; BRITTAN ASHJIAN, *Plaintiffs-Appellants*, v. CITY OF FRESNO; DERIK KUMAGAI; CURT CHASTAIN; TOMAS CANTU, *Defendants-Appellees*. | No. 17-16756 D.C. No. 1:15-cv-00316-DAD-SAB ORDER AND OPINION |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted December 18, 2018
San Francisco, California

Filed September 4, 2019

Before: MILAN D. SMITH, JR., JACQUELINE H. NGUYEN, Circuit Judges, and JANE A. RESTANI,* Judge.

---

\* The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Order;
Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Milan D. Smith, Jr.

---

**SUMMARY**[**]

---

### Civil Rights

The panel withdrew its prior opinion, found at *Jessop v. City of Fresno*, 918 F.3d 1031 (9th Cir. 2019), and filed a superseding opinion in its place.

The panel affirmed the district court's order granting the City of Fresno police officers' motion for summary judgment in an action alleging that the officers violated the Fourth and Fourteenth Amendments when they stole Appellants' property during the execution of a search and seizure pursuant to a warrant.

Following the search, the City Officers gave Appellants an inventory sheet stating that they seized approximately $50,000 from Appellants' properties. Appellants alleged, however, that the officers actually seized $151,380 in cash and another $125,000 in rare coins. Appellants alleged that the City Officers stole the difference between the amount listed on the inventory sheet and the amount actually seized from the properties.

The panel held that at the time of the incident, there was no clearly established law holding that officers violate the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Fourth or Fourteenth Amendment when they steal property seized pursuant to a warrant. For that reason, the City Officers were entitled to qualified immunity. The panel reasoned that although the decision in *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) was instructive on the question of whether the theft of property covered by the terms of a search warrant, and seized pursuant to the warrant, violates the Fourth Amendment, *Brewster's* facts varied in legally significant ways from those in this case. Moreover, the panel noted that the City Officers seized Appellants' property in 2013, prior to the *Brewster* decision in 2017. The panel held that although the City Officers ought to have recognized that the alleged theft was morally wrong, they did not have clear notice that it violated the Fourth Amendment. The panel further held that the Fourth Circuit's unpublished decision in *Mom's Inc. v. Willman*, 109 F. App'x 629, 636–37 (4th Cir. 2004)—the only case law that the time of the incident holding that the theft of property pursuant to a warrant violates the Fourth Amendment—did not put the "constitutional question beyond debate."

Specially concurring, Judge M. Smith wrote separately to share his view of why, even if *Brewster* were decided before the City Officers' alleged theft, it was not clear that the City Officers violated the Fourth Amendment.

---

## COUNSEL

Kevin G. Little, Esquire, Law Office of Kevin G. Little, Fresno, California; Neal K. Katyal, Colleen E. Roh Sinzdak, and Mitchell P. Reich, Hogan Lovells US LLP, Washington, D.C.; for Plaintiffs-Appellants.

Daniel P. Barer, Pollak Vida & Barer, Los Angeles, California; Peter J. Ferguson and Allen Christiansen, Ferguson Praet & Sherman APC, Santa Ana, California; Kevin M. Osterberg, Haight Brown & Bonesteel LLP, Riverside, California; for Defendants-Appellees.

Jessica Ring Amunson and Andrew C. Noll, Jenner & Block LLP, Washington, D.C., for Amici Curiae The DKT Liberty Project, Reason Foundation, Individual Rights Foundation, Public Justice, National Police Accountability Project, Law Enforcement Action Partnership, Institute for Justice, and Americans for Prosperity.

Clark M. Neily III and Jay R. Schweikert, Washington, D.C., as and for Amicus Curiae The Cato Institute.

C. Mitchell Hendy, Mayer Brown LLP, Los Angeles, California; Donald M. Falk, Mayer Brown LLP, Palo Alto, California; for Amici Curiae National Association of Criminal Defense Lawyers, American Civil Liberties Union of Northern California, and American Civil Liberties Union of Southern California.

Mahesha P. Subbaraman, Subbaraman PLLC, Minneapolis, Minnesota, for Amici Curiae Restore the Fourth, Inc. and Americans for Forfeiture Reform.

Jonathan F. Mitchell, Mitchell Law PLLC, Austin, Texas; Mark Chenoweth, Michael P. DeGrandis, and Caleb Kruckenberg, New Civil Liberties Alliance; for Amicus Curiae New Civil Liberties Alliance.

**ORDER**

The prior opinion in this case, found at *Jessop v. City of Fresno*, 918 F.3d 1031 (9th Cir. 2019), is hereby withdrawn. A superseding opinion will be filed concurrently with this order. Plaintiffs-Appellants' petition for rehearing en banc remains pending.

**OPINION**

M. SMITH, Circuit Judge:

Micah Jessop and Brittan Ashjian (Appellants) appeal an order granting a motion for summary judgment on a defense of qualified immunity. City of Fresno and Fresno police officers Derik Kumagai, Curt Chastain, and Tomas Cantu (the City Officers) filed the motion in an action alleging that the City Officers violated the Fourth and Fourteenth Amendments when they stole Appellants' property during the execution of a search and seizure pursuant to a warrant.

At the time of the incident, there was no clearly established law holding that officers violate the Fourth or Fourteenth Amendment when they steal property seized pursuant to a warrant. For that reason, the City Officers are entitled to qualified immunity.

**FACTUAL AND PROCEDURAL BACKGROUND**

As part of an investigation into illegal gambling machines in the Fresno, California area, the City Officers executed a search warrant at three of Appellants' properties. The warrant, signed by Fresno County Superior Court Judge Dale Ikeda, authorized the

> seiz[ure] [of] all monies, negotiable instruments, securities, or things of value furnished or intended to be furnished by any person in connection to illegal gambling or money laundering that may be found on the premises . . . [and] [m]onies and records of said monies derived from the sale and or control of said machines.

If the City Officers found the property listed, they were "to retain it in [their] custody, subject to the order of the court as provided by law."

Following the search, the City Officers gave Appellants an inventory sheet stating that they seized approximately $50,000 from the properties. Appellants allege, however, that the officers actually seized $151,380 in cash and another $125,000 in rare coins. Appellants claim that the City Officers stole the difference between the amount listed on the inventory sheet and the amount actually seized from the properties.

Appellants brought suit in the Eastern District of California alleging, among other things, claims against the City Officers pursuant to 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment violations. The City Officers moved for summary judgment based on qualified immunity. The district court granted the motion and dismissed all of Appellants' claims.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review summary judgment determinations, and officers' entitlement to qualified immunity, *de novo*. *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).

## ANALYSIS

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).

## I.  Fourth Amendment

The parties dispute whether the City Officers' actions violated the Fourth Amendment. The City Officers insist that because they seized Appellants' assets pursuant to a valid warrant, they did not violate the Fourth Amendment. Appellants, by contrast, argue that the City Officers' alleged theft was an unreasonable seizure under the Fourth Amendment.

Although courts were formerly required to determine whether plaintiffs had been deprived of a constitutional right before proceeding to consider whether that right was clearly established when the alleged violation occurred, *see Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court has since instructed that courts may determine which prong of qualified immunity they should analyze first. *Pearson*, 555 U.S. at 236. Addressing the second prong before the first is especially appropriate where "a court will rather quickly and easily decide that there was no violation of

clearly established law." *Id.* at 239. This is one of those cases.

A defendant violates an individual's clearly established rights only when "'the state of the law' at the time of an incident provided 'fair warning'" to the defendant that his or her conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[W]e may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005).

We have never addressed whether the theft of property covered by the terms of a search warrant, and seized pursuant to that warrant, violates the Fourth Amendment.[1] The only circuit that has addressed that question—the Fourth Circuit—concluded in an unpublished decision that it does. *See Mom's Inc. v. Willman*, 109 F. App'x 629, 636–37 (4th Cir. 2004). *Mom's* involved federal agents who failed to return the plaintiff's watch after the execution of a search warrant. *Id.* at 633. Relying on the Supreme Court's

---

[1] Importantly, we observe that the technical legal question of whether the theft of property covered by the terms of a search warrant, and seized pursuant to that warrant, violates the Fourth Amendment is a different question from whether theft is morally wrong. We recognize that theft is morally wrong, and acknowledge that virtually every human society teaches that theft generally is morally wrong. That principle does not, however, answer the legal question presented in this case.

decision in *United States v. Place*, 462 U.S. 696 (1983), the court reasoned that the Fourth Amendment "regulates all [] interference" with an individual's possessory interests in property, "not merely the initial acquisition of possession." *Mom's*, 109 F. App'x at 637. Thus, because the agents' theft of the watch interfered with the plaintiff's interest in it, "such theft violates the Fourth Amendment." *Id.*

Although we have not addressed this precise question, our decision in *Brewster v. Beck* is instructive. 859 F.3d 1194 (9th Cir. 2017). There, officers impounded the plaintiff's vehicle pursuant to a statute that authorized the seizure of vehicles when the driver had a suspended license. *Id.* at 1195. When the plaintiff later "appeared at a hearing . . . with proof that she was the registered owner of the vehicle and her valid California driver's license," however, the government refused to release the vehicle to her. *Id.* We reasoned that the Fourth Amendment was implicated by the government's actions because "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Id.* at 1197. Because "[t]he exigency that justified the seizure [of the plaintiff's vehicle] vanished once the vehicle arrived in impound and [the plaintiff] showed up with proof of ownership and a valid driver's license," we held that the government's impoundment of the vehicle "constituted a seizure that required compliance with the Fourth Amendment." *Id.* at 1196–97.

*Brewster*'s reasoning suggests that the City Officers' alleged theft of Appellants' property could also implicate the Fourth Amendment. Although the City Officers seized Appellants' money and coins pursuant to a lawful warrant, their continued retention—and alleged theft—of the property might have been a Fourth Amendment seizure because "[t]he Fourth Amendment doesn't become

irrelevant once an initial seizure has run its course." *Id.* at 1197.

*Brewster*'s facts, however, vary in legally significant ways from those in this case. Whereas *Brewster* concerned the government's impoundment of a vehicle, *id.* at 1195, Appellants argue that the City Officers stole their property. And while *Brewster* involved the seizure of property pursuant to an exception to the warrant requirement, *id.* at 1196, the City Officers seized Appellants' property pursuant to a warrant that authorized the seizure of the items allegedly stolen.

Even if the facts and reasoning of *Brewster* would dictate the outcome of this case, however, it was not clearly established law when the City Officers executed the search warrant. The City Officers seized Appellants' property in 2013, but *Brewster* was not decided until 2017. For that reason, we need not decide whether the City Officers violated the Fourth Amendment. The lack of "any cases of controlling authority" or a "consensus of cases of persuasive authority" on the constitutional question compels the conclusion that the law was not clearly established at the time of the incident. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Although the City Officers ought to have recognized that the alleged theft of Appellants' money and rare coins was morally wrong, they did not have clear notice that it violated the Fourth Amendment—which, as noted, is a different question. The Fourth Circuit's unpublished decision in *Mom's*—the only case law at the time of the incident holding that the theft of property seized pursuant to a warrant violates the Fourth Amendment—did not put the "constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Nor is this "one of those rare cases in which the constitutional right at issue is defined by a standard that is so 'obvious' that we must conclude . . . that qualified immunity is inapplicable, even without a case directly on point." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013). We recognize that the allegation of any theft by police officers—most certainly the theft of over \$225,000—is deeply disturbing. Whether that conduct violates the Fourth Amendment's prohibition on unreasonable searches and seizures, however, would not "be 'clear to a reasonable officer.'" *Id.* at 454 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).[2]

Appellants have failed to show that it was clearly established that the City Officers' alleged conduct violated the Fourth Amendment. Accordingly, we hold that the City Officers are protected by qualified immunity against Appellants' Fourth Amendment claim.

## II. Fourteenth Amendment

Appellants' Fourteenth Amendment claim suffers the same fate. Appellants argue that the City Officers' theft of their property violated their substantive due process rights under the Fourteenth Amendment. Assuming that to be true, however, the City Officers are entitled to qualified immunity because that right was not clearly established. We have not held that officers violate the substantive due process clause of the Fourteenth Amendment when they steal property seized pursuant to a warrant. The Seventh Circuit is the only

---

[2] As the district court recognized, such conduct might instead be punishable under California tort law. *Cf. United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992) ("Jakobetz may be able to argue that a New York court violated a statutory right under New York law.").

circuit that has addressed the related question of whether the government's refusal to return lawfully seized property to its owner violates the Fourteenth Amendment; it held that the substantive due process clause does not provide relief against that conduct. *See Lee v. City of Chicago*, 330 F.3d 456, 466–68 (7th Cir. 2003). Because the City Officers could not have known that their actions violated the Fourteenth Amendment's substantive due process clause, they are entitled to qualified immunity against Appellants' Fourteenth Amendment claim.

## CONCLUSION

We sympathize with Appellants. They allege the theft of their personal property by police officers sworn to uphold the law. If the City Officers committed the acts alleged, their actions were morally reprehensible. Not all conduct that is improper or morally wrong, however, violates the Constitution. Because Appellants did not have a clearly established Fourth or Fourteenth Amendment right to be free from the theft of property seized pursuant to a warrant, the City Officers are entitled to qualified immunity.

**AFFIRMED**.

---

M. SMITH, Circuit Judge, specially concurring:

As the panel opinion recognizes, there is no question that the City Officers' alleged conduct, if true, was morally reprehensible. Whether something violates the Fourth Amendment, however, is a different question from whether it is outrageous and morally wrong. I write separately to share my view why, even if *Brewster v. Beck* were decided before the City Officers' alleged theft, it is not clear that the

officers violated the Fourth Amendment. 859 F.3d 1194 (9th Cir. 2017).

*Brewster*'s reasoning appears to conflict with the Supreme Court's jurisprudence on Fourth Amendment seizures. The Court has defined a seizure as "a single act, and not a continuous fact." *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471 (1873). "From the time of the founding to the present, the word 'seizure' has meant a 'taking possession.'" *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (quoting 2 N. Webster, *An American Dictionary of the English Language* 67 (1828); 2 J. Bouvier, *A Law Dictionary* 510 (6th ed. 1856); *Webster's Third New International Dictionary* 2057 (1981)). Whereas *Brewster* held that the Fourth Amendment continues to apply after the government's initial seizure of property, these Supreme Court cases suggest that, once the government has taken possession of property, a seizure is complete. It is "[p]ossession, which follows seizure, [that] is continuous." *Thompson*, 85 U.S. (18 Wall.) at 471.

Perhaps because of the Court's case law, *Brewster*'s reasoning also conflicts with that of several other circuits, which have concluded that the Fourth Amendment provides protection only against the initial taking of property, not its continued retention. *See Lee v. City of Chicago*, 330 F.3d 456, 460–66 (7th Cir. 2003); *Fox v. Van Oosterum*, 176 F.3d 342, 349–51 (6th Cir. 1999); *see also Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) (government's continued retention of seized property did not violate the Fourth Amendment because the officer "had probable cause to seize [the plaintiff's] property"); *United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992) (government's continued retention of seized property implicates "a

statutory right under New York law," not the Fourth Amendment).

Here, the City Officers obtained a warrant that authorized them "[t]o seize all monies . . . or things of value furnished or intended to be furnished by any person in connection to illegal gambling or money laundering that may be found on the premises." Accordingly, the warrant permitted the City Officers to seize the money and rare coins that Appellants argue the City Officers stole from them. Under the reasoning of the Supreme Court and several circuits cited above, therefore, Appellants' Fourth Amendment claim appears to fail. Because the City Officers' initial seizure of Appellants' property was lawful, and because a Fourth Amendment seizure is complete after the government has taken possession of the property, Appellants would not be able to state a Fourth Amendment claim against the City Officers for their theft of the property *after* its lawful seizure.

As the opinion notes, *Mom's Inc. v. Willman* is the only decision to have held that the theft of property seized pursuant to a warrant violates the Fourth Amendment. 109 F. App'x 629 (4th Cir. 2004). There, the Fourth Circuit relied on *United States v. Place*, 462 U.S. 696, 706 (1983) for the proposition that "[t]he Fourth Amendment regulates all [] interference" with a person's property interests, "not merely the initial acquisition of possession." *Id.* at 637.

In *Place*, the Court held that an officer's reasonable suspicion that property may be involved in a crime permits the officer "to detain the luggage briefly . . . provided that the investigative detention is properly limited in scope." *Place*, 462 U.S. at 706. After that brief amount of time has passed, however, probable cause is required to justify an officer's continued seizure of the property. *Id.* at 709–10.

*Place* thus addresses when an investigatory seizure of property might be reasonable when based on a level of suspicion less than probable cause. The case is instructive for how far officers can go in searching or seizing property without probable cause. But *Place* is inapposite in a case such as this in which officers have established probable cause and obtained a warrant for the property that is seized. *Place*, therefore, does not support the weight that *Mom's* put on it.

Although the question appears to have an obvious answer at first blush, it is not clear whether the theft of property seized pursuant to the warrant violates the Fourth Amendment. The Supreme Court was mindful of cases such as this when it admonished courts not to resolve "difficult and novel questions of constitutional . . . interpretation that will 'have no effect on the outcome of the case.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009)). We need not attempt to reconcile the conflicting case law. As the panel opinion acknowledges, the lack of clearly established law at the time of the incident compels the conclusion that the City Officers are entitled to qualified immunity.